**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00223-CR**
_____

**RICHARD DARREN GOODWIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-10-11611-CR**

**OPINION**

A jury found Richard Darren Goodwin guilty of the criminal offense of violating the terms of his sexually violent predator commitment. *See* Tex. Health & Safety Code Ann. § 841.085 (West 2010). He received a twenty year sentence as a repeat offender. We hold venue was proper in Montgomery County, the evidence supports the verdict, and the trial court did not err in denying a motion to

1

suppress.[1]

PROOF OF VENUE

Goodwin contends he is entitled to a new trial because the State alleged but failed to prove that the offense occurred in Montgomery County. Goodwin argues the State alleged Goodwin violated the commitment order in Montgomery County but proved Goodwin violated the commitment order in Travis County, and that consequently the State failed to prove its venue allegation. Goodwin relies on article 21.02 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 21.02(5) (West 2009) (An indictment "must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented."). But "Article 21.02(5) must be read with the understanding that there is a distinct difference between 'jurisdiction' and 'venue.' Jurisdiction concerns the authority or the power of the court to try a case." *Skillern v. State*, 890 S.W.2d 849, 859 (Tex. App.—Austin 1994, pet. ref'd).

"To sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." Tex. Code Crim. Proc. Ann. art.

---

[1] Issue six complains that the trial court failed to enter written findings on Goodwin's motion to suppress. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). That issue was resolved by the filing of findings in a supplemental record. *See* Tex. R. App. P. 44.4(b).

2

13.17 (West 2005). Venue for an offense committed under section 841.085 of the Health and Safety Code is governed by a special venue statute. *See* Tex. Code Crim. Proc. Ann. art. 13.315 (West Supp. 2012). "An offense under Section 841.085, Health and Safety Code, may be prosecuted in the county in which any element of the offense occurs or in Montgomery County." *Id.*

The indictment alleged in part that Goodwin intentionally or knowingly violated "civil commitment requirements of Section 841.082 of the Texas Health and Safety Code as required by the Final Judgment and Order of Civil Commitment entered in Cause Number 05-06-04904-CV, In Re: The Commitment of Richard Darren Goodwin, ordered by Judge P.K. Reiter of the 359th Judicial District Court of Montgomery County[.]" A copy of the judgment for Cause Number 05-06-04904-CV was admitted into evidence during the trial. The judgment established that Goodwin is subject to commitment requirements in accordance with section 841.082 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 841.082 (West Supp. 2012).[2] The State satisfied the indictment's venue allegations. *See* Tex. Code Crim. Proc. Ann. art. 13.315. Having established that it was prosecuting an offense under section 841.085, the

---

[2] Because the 2011 amendment to Chapter 841 of the Health and Safety Code does not affect our analysis, throughout this opinion we cite the current version of the statute.

State was not required to prove that Goodwin violated the commitment order while he was in Montgomery County; under the venue statute the location at the time of the offense was immaterial when the offense is prosecuted in Montgomery County. *See* Tex. Health & Safety Code Ann. § 841.085. We overrule issue one.

SUFFICIENCY OF THE EVIDENCE

In his second issue, Goodwin challenges the sufficiency of the evidence to sustain his conviction. "[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review all of the evidence in the light most favorable to the verdict and determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[S]ufficiency and admissibility are distinct issues." *Hanks v. State*, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004). We review the evidence only as the sufficiency of the State's proof as to elements of the offense, not as to the legality of the seizure. *See id.* at 671-72.

"A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a

4

civil commitment requirement imposed under Section 841.082." Tex. Health & Safety Code Ann. § 841.085(a). At all times since his initial commitment, a court order has required that Goodwin "participate in and comply with a specific course of treatment, determined by the Council on Sex Offender Treatment" and "follow written supervision requirements of the Council on Sex Offender Treatment and/or the case manager."[3] The initial commitment order required that Goodwin reside in Harris County. On October 21, 2010, the trial court signed an order requiring Goodwin to reside in a Texas residential facility under contract with the Council on Sex Offender Treatment ("CSOT").[4] Without citing authority, Goodwin analogizes a civil commitment order to a community supervision order and suggests that the evidence is legally insufficient if his violations of the civil commitment order occurred as a result of the amended condition. But the indictment did not allege that Goodwin violated the civil commitment order by residing in a particular location, and his commission of the acts alleged in the indictment is unchallenged in this appeal. Goodwin was subject to a civil commitment order and to supervision by CSOT regardless of the location where he resided. A rational jury

---

[3] In September 2011 management of the sex offender civil commitment program transferred from the Council on Sex Offender Treatment to a newly-created agency, the Office of Violent Sex Offender Management. *See* Tex. Gov't Code Ann. § 420A.020 (West 2012).

[4] Goodwin challenges the validity of this order in issues three and four.

could find beyond a reasonable doubt that after having been adjudicated and civilly committed as a sexually violent predator, Goodwin violated a civil commitment requirement. *See id.*; *Jackson*, 443 U.S. at 319. We overrule issue two.

DENIAL OF MOTION TO SUPPRESS

In issue three, Goodwin contends the trial court erred in denying his motion to suppress physical evidence. At the time of the offense Goodwin was residing in a halfway house as required by the order of civil commitment. Goodwin filed a grievance requesting the return of property that was taken from him during a temporary transfer to the Travis County detention center. In an attempt to locate the property that Goodwin had reported missing, on December 10, 2010, the grievance sergeant searched Goodwin's belongings, which had been packed in anticipation of another transfer, and in the course of the search located items prohibited by his sex offender treatment plan. The items were seized as contraband and turned over to his program manager.

Goodwin contends the seized evidence was inadmissible because he was illegally housed at the halfway house. The order of civil commitment signed on October 4, 2005 required Goodwin to reside in a halfway house unless otherwise approved by CSOT. The civil commitment order also required that Goodwin "shall reside in Harris County." On October 21, 2010, an order signed in the civil

6

commitment case stated that Goodwin "shall reside in a Texas residential facility under contract with the Council on Sex Offender Treatment (Council) or at another location or facility approved by the Council." During the trial of his criminal case Goodwin argued this order was invalid because it was signed without notice and a hearing required by statute. *See* Tex. Health & Safety Code Ann. § 841.082(e) ("The requirements imposed under Subsection (a) may be modified at any time after notice to each affected party to the proceedings and a hearing."). In addition to being subject to civil commitment, on December 7, 2010, Goodwin was also placed on community supervision in Travis County. The community supervision order required Goodwin to reside in Travis County and comply with all conditions of civil commitment.

Goodwin presumes CSOT could not lawfully house him at a location other than Harris County. But the residence requirement in the civil commitment order was imposed on Goodwin, not on CSOT. *See* Tex. Health & Safety Code Ann. § 841.082(a) ("[T]he judge shall impose on the person requirements necessary to ensure the person's compliance with treatment[.]"). Goodwin was legally committed for supervision by CSOT without regard to his current place of residence.

Goodwin also contends the seizure violated his right to be free from

7

unreasonable searches and seizures because the search was not conducted pursuant to a warrant and the State failed to establish either exigent circumstances or consent. Goodwin's reasonable expectation of privacy diminished by virtue of his dual status as a probationer and a civilly committed person. As a sexually violent predator subject to a commitment order Goodwin does not have an expectation of privacy equal to an individual in society generally. *See Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). As a probationer subject to search as a condition of probation Goodwin had a significantly diminished expectation of privacy. *See U.S. v. Knights*, 534 U.S. 112, 119-20 (2001). Where a person is residing in a custodial facility, the State has a legitimate institutional interest in the intrusion. *See Soria v. State*, 933 S.W.2d 46, 60 (Tex. Crim. App. 1996) (A "shakedown" of a prisoner's cell is not unreasonable.); *see also Bell v. Wolfish*, 441 U.S. 520, 557 (1979) (Persons who are detained without having been convicted also have "a diminished expectation of privacy after commitment to a custodial facility[.]"). The sergeant had a legitimate institutional reason to examine Goodwin's belongings after Goodwin's grievance questioned the location of his property in the facilities. Under the circumstances, the search was not unreasonable.

During the suppression hearing, Goodwin suggested that if the halfway house were a custodial facility the civil commitment order would have been

8

suspended by operation of the civil commitment statute. *See* Tex. Health & Safety Code Ann. § 841.150 (West Supp. 2012). We presume the entire statute is intended to be effective and a reasonable result is intended. Tex. Gov't Code Ann. § 311.021 (West 2013). The confinement referred to in section 841.150 does not refer to the mandatory residential facility described by section 841.082(a)(1). Tex. Health & Safety Code Ann. §§ 841.082(a)(2), 841.150. Moreover, if Goodwin was not legally housed in the Travis County facility, any taint from that illegality was attenuated by Goodwin's subsequent violation of the civil commitment order. *See Goodwin v. State*, 376 S.W.3d 259, 267 (Tex. App.—Austin 2012, pet. ref'd). Finally, the State proved other violations of the civil commitment order that bore no relation to the challenged physical evidence and are unchallenged on appeal; any error from admitting improperly seized evidence would be harmless. *See Tollefson v. State*, 352 S.W.3d 816, 822-23 (Tex. App.—San Antonio 2011, pet. ref'd). "A constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted." *Id.* at 822. We overrule issue three.

DENIAL OF MOTION TO DISMISS

In issue four, Goodwin contends the trial court erred in denying a motion to dismiss Goodwin filed during the trial. As grounds for dismissal, Goodwin alleged:

9

(1) the October 4, 2005 civil commitment order required that he reside in Harris County, Texas; (2) the October 21, 2010 order changed the residency requirement to a Texas residential facility under contract with CSOT; (3) Health and Safety Code section 841.082(e) states that the requirements imposed under section 841.082 may be modified at any time after notice and a hearing; and (4) Goodwin did not have notice and was not present at the hearing. In a hearing before the trial court Goodwin argued that a lack of notice and a hearing invalidated the order on which his transfer to the Travis County facility was based.

The record does not show that Goodwin challenged his transfer to Travis County in his civil commitment case. *See generally Stautzenberger v. State*, 232 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (The imposition of a license reinstatement fee could not be collaterally challenged in later prosecution for driving while license invalid.). Furthermore, Goodwin would still be subject to the civil commitment order that required him to follow written supervision requirements of CSOT or the case manager notwithstanding the October 21, 2010 order. Goodwin was not indicted for violating a residency requirement of a civil commitment order.

Moreover, Goodwin presented no argument or authority, at trial or on appeal, that a dismissal of the indictment is the proper remedy. *See generally State*

10

*v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003) ("It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent."). Dismissal is a drastic remedy that cannot be applied without first finding a constitutional violation has occurred. *Id.* at 817. Goodwin fails to explain why he could not have challenged his transfer to Travis County and addressed his complaint regarding lack of notice in the civil commitment case. We overrule issue four.

GRANT OF MOTION IN LIMINE

In issue five, Goodwin contends that the trial court erred in granting the State's motion in limine prohibiting the mention of suspension of the civil commitment order during a committed person's confinement. *See* Tex. Health & Safety Code Ann. § 841.150. A commitment order "is effective immediately on entry of the order, except that the outpatient treatment and supervision begins on the person's release from a secure correctional facility . . . and continues until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.081 (West 2010). The statute provides that "The duties imposed by this chapter are suspended for the duration of any confinement of a person[.]" Tex. Health & Safety Code Ann. § 841.150(a).

11

We must presume that in enacting a statute, the entire statute is intended to be effective and a just and reasonable result is intended. *See* Tex. Gov't Code Ann. § 311.021. In construing a statute, a court may consider the object sought to be obtained and the consequences of a particular construction. *See id.*

Goodwin suggests the granting of the motion in limine prevented Goodwin from raising the issue of confinement as a fact issue germane to a defensive theory. He asserts that the civil commitment order was suspended when he was alleged to have committed the offense.

Goodwin was civilly committed in 2005. On October 29, 2010, Goodwin arrived at a civil commitment facility that was separate from the Travis County detention facility. The incidents alleged in the indictment occurred on November 23, 2010, December 9, 2010, and December 10, 2010. On those dates, Goodwin was housed at the halfway house operated under contract with CSOT.

A person may be civilly committed before his release from prison, but actual commitment occurs upon his release from prison. *See* Tex. Health & Safety Code Ann. § 841.081; *See also In re Commitment of Evers*, No. 09-11-00430-CV, 2012 WL 6213508, at *4 (Tex. App.—Beaumont Dec. 13, 2012, pet. denied) (mem. op.) (Civil commitment commences when a person is released from prison, not when he is released from parole.). If the person is subsequently convicted of an offense, the

statutory duties imposed through the civil commitment order are suspended while he is imprisoned for the new offense. *See* Tex. Health & Safety Code Ann. § 841.150. Goodwin appears to be arguing that a civil commitment order is suspended while the person is residing in the facility required by section 841.082. *See* Tex. Health & Safety Code Ann. § 841.082(a)(1). But if section 841.150 were read to suspend the duties imposed by Chapter 841 while a person is residing in a Texas residential facility under contract with CSOT, the civil commitment order would never go into effect. A civil commitment commences when a person is released from prison to a Texas residential facility under contract with CSOT and a person who has been committed is required to reside in such a facility while the order is in effect. *See* Tex. Health & Safety Code §§ 841.081(a), 841.082(a)(1). Goodwin has not shown that the trial court erred in granting the motion in limine. We overrule issue five. The judgment of the trial court is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on June 12, 2013
Opinion Delivered October 30, 2013
Publish

Before Gaultney, Kreger, and Horton, JJ.

13